```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA
```

PATRICK S. MITCHELL,            )
                                )
            Plaintiff,           )
                                )
v.                              )        Case No. CIV-16-315-RAW-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Patrick S. Mitchell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 38 years old at the time of the ALJ's latest decision. Claimant completed his high school education as well as masonry training at vocational/technical school. Claimant has worked in the past as a mason, heavy equipment operator, septic tank installer, carpenter, and restaurant equipment installer. Claimant alleges an inability to work beginning April 1, 2010 due to limitations resulting from lower back pain, leg and foot pain, gout, numbness and weakness in the extremities, tightness in the chest,

shortness of breath, headaches, dizziness, high blood pressure, and mental impairments.

## Procedural History

On August 20, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on February 15, 2012. Thereafter, the decision was reversed by this Court on appeal on September 29, 2014.

Claimant then filed additional applications for benefits on June 18, 2013. The applications were again denied. ALJ Jeffrey Wolfe consolidated the remanded decision with the consideration of the new applications. On December 15, 2015, ALJ Wolfe conducted an administrative hearing by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in Tulsa, Oklahoma. On March 17, 2016, he issued a second unfavorable decision. Claimant did not appeal to the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find Claimant's impairments equaled a listing at step three; (2) failing to make a proper RFC determination; (3) failing to engage in a proper credibility determination; and (4) reaching erroneous findings at step five.

**Step Three Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairment of degenerative disc disease of the lumbar spine. (Tr. 389). The ALJ concluded that Claimant retained the RFC to perform sedentary work with the limitations that he was able to lift and carry up to ten (10) pounds occasionally and under ten (10) pounds frequently; stand and walk for four hours in an eight hour workday; sit for six hours in an eight hour workday; must have the ability to alternate between sitting and standing at will during the workday. The ALJ also found Claimant could not climb ladders, ropes, or scaffolds. (Tr. 394).

After consulting with a vocational expert, the ALJ concluded

Claimant could perform the representative jobs of table worker, plastics product assembler, and optical goods assembler, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 402). As a result, the ALJ found Claimant was not disabled from April 1, 2010 through the date of the decision. Id.

Claimant first contends the ALJ should have determined that his impairments met or equaled a listing at step three. At step three, Claimant bears the burden of demonstrating that his condition meets or equals all of the specified criteria of the particular listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Claimant specifically asserts he meets the requirements for Listing 1.04A, which provides in pertinent part:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebra fracture), resulting in compromise of a nerve root (including cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).
>                              * * *
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1.

6

The ALJ determined that the medical evidence did not support a finding that Claimant had motor loss with accompanying sensory or reflex loss as required by Listing 1.04A. He cited to the record, noting that an MRI from December 17, 2014 indicated "significant pathology" at L4-5, disc protrusion flattening the ventral thecal sac, hypertrophic changes and mild bilateral foraminal narrowing, and degenerative findings at L5-S1 with bilateral L5 pars defects with grade I-II anterolisthesis of L5 and S1. (Tr. 393, 1189-90).

The ALJ also acknowledged the findings of Dr. Seth Nodine. Dr. Nodine found Claimant to have normal range of motion of the back and did not find any sensory loss or atrophy. (Tr. 258-59, 393). Dr. Nodine determined Claimant's heel/toe walking was normal and straight leg raising was negative in both the supine and seated positions. (Tr. 263, 393-94). Claimant also did not experience muscle spasms although he was positive for tenderness. Id.

The ALJ also noted the findings from October 18, 2010 of Dr. Wojciech Dulowski, a consultative examiner. Dr. Dulowski also found Claimant's heel/toe walking to be normal and straight leg raising to be negative in the sitting and supine positions. (Tr. 231, 394). He did find Claimant experienced both tenderness and muscle spasms. (Tr. 231). Dr. Dulowski found Claimant walked normally and had good safety and stability. He could walk on heels and tiptoes with

7

slight pain and without assistive device. Claimant's hand strength was 5/5 and he was found to have good gross and fine manipulation. (Tr. 226, 394).

The ALJ also cited to the findings of Dr. Jimmie Taylor, a consultative examiner, to show consistency over time in the findings. Dr. Taylor found Claimant had limited range of motion with extension, lateral flexion bilateral with pain. His grip strength was 5/5 on the right and left with normal range of motion. (Tr. 926). Claimant was evaluated to have a slow gait but appeared normal with no assistive device. Dr. Taylor found Claimant was able to heel walk and tandem walk but was unable to walk on his tip toes. (Tr. 927).

The ALJ acknowledged the records from the Wellness Clinic of Roland and the findings of chronic low back pain. The record from October 27, 2011 also indicates "[p]ositive straight leg raisers on the right" and tenderness to palpate in the lumbar region with decreased range of motion. (Tr. 911). These findings are repeated verbatim to the word throughout the record from this facility. (Tr. 907, 899, 880, 876, 874, 864, 859, 853, 846, 840, 829, 821, 813, 802, 793, 786). This repetition is somewhat suspect given the later examination findings of negative straight leg raising. In any event, the record does not indicate that Claimant suffered from the

8

motor, sensory, or reflex loss required by Listing 1.04A. Since all of the criteria of the listing must be found to exist, the ALJ did not err in finding Claimant failed to meet or equal this listing.

**RFC Determination**

In the myriad of sub-issues raised in this category of error asserted by Claimant, he begins with the contention that the ALJ should have determined Claimant's mental limitation to be a severe impairment at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient

9

to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The ALJ noted the report of Dr. Theresa Horton, a licensed psychologist, which found Claimant did not suffer from a mental condition. (Tr. 269). Additionally, Dr. Anne-Marie Bercik completed a Psychiatric Review Technique on May 5, 2011 which indicated Claimant did not suffer from a medically determinable mental impairment. (Tr. 270).

Dr. Robert Spray examined Claimant on October 14, 2013. He diagnosed Claimant with Adjustment Disorder with depressed mood,

10

rule out Pain Disorder. (Tr. 920). Yet, he concluded (1) Claimant's problem with day-to-day adaptive functioning were related to physical pain not mental problems; (2) Claimant has had conflict with his girlfriend but they stay together for the kids and that he related well with others on previous jobs; (3) Claimant's speech articulation was normal and he communicated adequately; (4) Claimant's cognitive functioning was adequate; (5) Claimant's attention and concentration were normal; (6) he persisted well during the exam; and (7) his pace was normal. (Tr. 920-21).

On January 7, 2016, Dr. Spray performed an additional psychological evaluation of Claimant. He concluded Claimant had an average IQ. Claimant exhibited spontaneous speech and was cooperative with the testing procedures. His affect was appropriate and variable. He appeared "sad and mildly anxious." He had no thoughts of self harm, reported no history of euphoric mood or excessive energy, and stated it took more time for him to get mad than the average person. Dr. Spray noted Claimant's anxiety symptoms included chest pain, difficulty breathing, wanting to flee, sweating, and rapid heartbeat. (Tr. 1245).

Dr. Spray completed a medical source statement wherein he found Claimant was markedly limited in reliability, maintaining regular attendance, being punctual within customary tolerances, completing

11

a normal workday and/or workweek, adjusting to the introduction of new and unfamiliar personnel, either among co-workers or supervisors, behaving in an emotionally stable manner, interacting with the general public, accepting instructions and appropriately responding to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes and a severe limitation in working in coordination or proximity to others without being distracted by them. (Tr. 1247-48).

The ALJ concluded that Dr. Spray's assessment appeared inconsistent with Claimant's performance on the mental status examination and diagnosis of mild depression. As a result, he accorded Dr. Spray's functional opinion "little weight." (Tr. 392).

The ALJ must evaluate every medical opinion in the record and consider several factors in deciding the weight that should be given to any medical opinion. Salazar v. Barnhart, 468 F.3d 615, 625-626 (10th Cir. 2006)(citing 20 C.F.R. § 416.927(d)). The ALJ must "give good reasons" for the weight he ultimately assigns a medical opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins v. Barnhart, 350 F.3d 1297, 1301 (quotations omitted).

The ALJ cited to the conflicting reports from other medical professionals which directly contradicted Dr. Spray's functional assessment. Moreover, the level of functional limitation found by Dr. Spray was not remotely supported by his mental health evaluation findings. The ALJ was within his evaluative prerogative to reject Dr. Spray's unsupported restrictions.

Claimant next contends the ALJ improperly rejected the assessments of "Dr. Taylor." However, no Dr. Taylor rendered an opinion in this case. He also challenges the ALJ's weighing of Dr. George Howell. Dr. Howell, a treating physician, completed a medical source statement on December 30, 2011. He concluded Claimant could sit and stand for 30 minutes at a time and walk for one hour at a time. Claimant could sit for two hours in an eight hour workday, and stand and walk for three hours in an eight hour workday. He would need to take rest breaks at hourly intervals or less and alternate between sitting and standing at 30 minute intervals. Claimant could frequently lift up to ten pounds and occasionally lift up to 20 pounds. He could occasionally carry up

13

to ten pounds and rarely carry up to 20 pounds. According to Dr. Howell, Claimant was limited in his lower extremities but could occasionally push/pull, work above shoulder level, and reach. He could engage in frequent grasping and fingering/fine manipulation. Claimant could occasionally bend, balance, and climb stairs and rarely squat and stoop. Claimant was also cautioned to avoid unprotected heights and dangerous moving machinery. (Tr. 1187-88).

The ALJ recognized his obligation to give controlling weight to a treating physician's opinion so long as it was well-supported by medical evidence and was not inconsistent with other medical evidence. (Tr. 399). He also noted the treatment Claimant received at the Wellness Clinic of Roland where Dr. Howell practices and the identical findings of lumbar tenderness, decreased range of motion, and positive straight leg raising on the right throughout the record. Id. The ALJ stated concern that it was not clear how frequently Dr. Howell examined and treated Claimant, which is a factor to be considered in the weight analysis, despite Claimant's dismissal of this statement. The ALJ also found Dr. Howell's functional findings were disproportionate with the significant restrictions he found. The ALJ also considered the fact that Claimant was dismissed from pain management agreement with the Wellness Clinic. In fact, the Wellness Clinic terminated the

14

doctor/patient relationship with Claimant and did not permit him to see another physician or obtain any more pain medication from the Clinic. (Tr. 774). The ALJ noted that Dr. Howell's opinion was contradicted by state agency medical sources. He concluded Dr. Howell's functional assessment was entitled to "little weight." (Tr. 339).

The ALJ complied with the Watkins factors in reaching the conclusion that Dr. Howell's opinion was not entitled to significant weight. While Claimant certainly reported pain with his condition and some limitations during his treatment, his restrictions did not approach the level of disability which Dr. Howell's findings in his medical source statement would require. As it turns out, it appears Claimant was overmedicating for his pain condition which would indicate that his subjective statements of pain were for other purposes than to seek treatment. This Court finds no error in the ALJ's assessment of Dr. Howell's opinion.

### Step Five Determination

Claimant contends the ALJ's RFC did not contain all of his limitations and, therefore, the hypothetical questioning of the vocational expert based upon that RFC was in error. Since the RFC has been found to be supported by substantial evidence, the questions posed by the ALJ to the expert were appropriate.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 25th day of August, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE